## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH F. ROCCO and CHRISTINA L. ROCCO,** | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-0366 |
| | ) | |
| **J.P. MORGAN CHASE BANK as trustee** | ) | (Bkcy. No. 04-24895) |
| **for the TRUMAN CAPITAL MORTGAGE** | ) | |
| **LOAN TRUST,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Appellee. | ) | |

CERCONE, D.J.

## OPINION

Appellants seek review of an order issued by the bankruptcy court on January 6, 2005 granting a Motion for Relief from the Automatic Stay filed by JP Morgan Chase Bank, as Trustee for the Truman Capital Mortgage Loan Trust ("JP Morgan"), contending the court abused its discretion in granting the motion and erred in ruling that a sherif sale did not contravene the Bankruptcy Code. After careful consideration of the arguments presented and the authority bearing on the matters raised, the Court concludes that bankruptcy court did not abuse its discretion in granting relief from the stay nor did it err in concluding that section 547 of the Bankruptcy Code was inapplicable to the sheriff sale that occurred prior to the bankruptcy case. Accordingly, the bankruptcy court's order of January 6, 2005 will be affirmed.

## FACTUAL HISTORY

The following facts are not in dispute. On April 13, 2004, Joseph F. Rocco and Christina L. Rocco ("debtors") filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code (the "Bankruptcy Code"). Debtors had previously filed for bankruptcy but that case was dismissed on February 3, 2004.

JP Morgan held a mortgage on the debtors' residence at 189 Butz Road, Latrobe, Pennsylvania (the "residence").[1]  After debtors defaulted on their mortgage, JP Morgan instituted foreclosure proceedings in the Court of Common Pleas of Westmoreland County, Pennsylvania. Following the entry of a foreclosure judgment in JP Morgan's favor, a sheriff sale was scheduled for January 5, 2004.  Debtors' first bankruptcy case stayed that sale.

In March 2004, after the first bankruptcy case was dismissed, the residence was sold at a sheriff sale.  JP Morgan purchased the residence for one dollar and recorded the deed shortly thereafter.  After JP Morgan purchased the residence and recorded the deed, debtors filed the current bankruptcy case.  JP Morgan instituted an ejectment action against debtors in Westmoreland County on March 9, 2004; this bankruptcy case stayed the state court ejectment action.   JP Morgan moved for relief from the stay to proceed with the ejectment action.

On May 13, 2004, Debtors filed an adversary action against various parties involved in the refinancing of their mortgage, including JP Morgan.  In their adversary complaint, debtors allege violations of section 547 and 548 of the Bankruptcy Code, the Truth in Lending Act, Pennsylvania's Unfair Trade Practices Act as well as counts for fraud and civil conspiracy.

The bankruptcy court granted JP Morgan's Motion for Relief from the Automatic Stay on January 6, 2005.  The bankruptcy court concluded that debtors did not possess a protected property interest in the residence when they filed the bankruptcy case and, as a result, had no standing to object to relief from the stay.  The bankruptcy court also concluded that cause existed for lifting the automatic stay and that JP Morgan lacked adequate protection.  Finally, the bankruptcy court found that JP Morgan obtained title to the residence at a regularly-conducted, non-collusive sheriff sale such that the sale was not a preferential transfer under Section 547 of the Bankruptcy Code.

## DISCUSSION

---

[1]Debtors refinanced their home mortgage in August 2000.  In their adversary proceeding, debtors allege a variety of irregularities and potentially illegal conduct on behalf of the companies that issued the refinancing.  After consummation of the refinancing, one of the two mortgagees, AmeriQuest, sold its loan to JP Morgan.

Debtors raise two arguments on appeal.  First, they  argue that the bankruptcy court erred when it concluded that the sheriff sale that occurred prior to the bankruptcy filing was not a preferential transfer under section 547 of the Bankruptcy Code;[2] second, debtors argue that the bankruptcy  court abused its discretion by granting relief from the automatic stay.

This court has appellate jurisdiction over final orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1) and reviews *de novo* the bankruptcy court's conclusions of law. *In re Ben Franklin Hotel Assocs.,* 186 F.3d 301, 304 (3d Cir.1999); *In re Equipment Leassors of Pennsylvania,* 235 B.R. 361, 363 (E.D. Pa. 1999).   A bankruptcy court's decision to lift the automatic stay is a discretionary decision and will be overturned on appeal only upon a showing that the court abused its discretion.  *See In re Wilson,* 116 F.3d 87, 89 (3d Cir.1997); *Matter of Vitreous Steel Products Co.,* 911 F.2d 1223, 1231 (7th Cir.1990); *see also Matter of Lippolis,* 228 B.R. 106, 112 (E.D. Pa.1998).

### A.      Relief from the Automatic Stay

First, the Court will consider the bankruptcy court's decision to lift the automatic stay so that JP Morgan could pursue its state court ejectment action.  Debtors contend that the bankruptcy court should have considered JP Morgan's "underlying fraud" and its recoupment rights when it considered JP Morgan's motion.  This argument lacks merit.

The automatic stay provision, 11 U.S.C. § 362(a), sweeps broadly and automatically stays all judicial actions against a debtor. *See Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194 (3d Cir. 1991).  As the Third Circuit Court of Appeals has explained, "the purpose of the automatic stay provision is to afford the debtor a 'breathing spell' by halting the collection process. It enables the debtor to attempt a repayment or reorganization plan with an aim toward satisfying existing debt." *In re Siciliano,* 13 F.3d 748, 750 (3d Cir.1994).  There are, however,

---

[2] Debtors initially raised arguments under both sections 547 and 548 of the Bankruptcy Code in their adversary proceeding (Adv. No. 04-02592).  They also raised these arguments in their Answer, which the bankruptcy court construed as a response to JP Morgan's Motion for Relief from the Automatic Stay.  In their appellate brief to this Court, however, Debtors indicate that they "do not continue to assert a claim under Bankruptcy Code Section 548." Appellant's Brief at 10 n.1.

grounds under which a bankruptcy court can grant relief from the automatic stay including: (1) "for cause, including the lack of adequate protection of an interest in property of such party in interest"; or (2) with respect to an act against property, if the debtor lacks equity in the property, and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d).[3]

 1. <u>Cause</u>

Although Section 362(d)(1) does not define "cause" for lifting a stay, courts examine the totality of circumstances to determine if a movant has established that cause exists. *In re Wilson,* 116 F.3d 87, 90 (3d Cir. 1991). Cause is broadly construed but generally involves consideration of both "the balance of harm to the parties if the stay is denied" and the interest of efficient administration of bankruptcy cases. *See Weiss v. U.S.*, 2000 WL 1052983, *1 (E.D. Pa. 2000). Commonly accepted reasons for finding cause include situations where there was no equity, or diminishing equity, in the property securing a creditor's claim or where there is a threat that the value of the property may decline. *In re Rosen*, 208 B.R. 345, 355 -57 (D.N.J. 1997).

Although section 541 of the Bankruptcy Code defines property of the bankruptcy estate, determinations as to the quality and extent of a debtor's interest in a particular piece of property

---

[3] The provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (2005), do not affect the Court's analysis of this case because that act is effective in cases commenced on or after October 17, 2005; debtors filed their case prior to that date. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 revises section 362(d) in the following manner:
SEC. 303. CURBING ABUSIVE FILINGS.(a) IN GENERAL.
Section 362(d) of title 11, United States Code, is amended
(1) in paragraph (2), by striking "or" at the end;
(2) in paragraph (3), by striking the period at the end and inserting "; or"; and
(3) by adding at the end the following:
 "(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either--
 "(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or "(B) multiple bankruptcy filings affecting such real property.
 If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording."

or other asset are made by consulting state law. *In re Eagle Enters., Inc.*, 265 B.R. 671, 677-78

(E.D. Pa. 2001)*; see also Butner v. United States,* 440 U.S. 48, 55 (1979) (concluding that

property interests, in bankruptcy or otherwise, are determined by state law). Pennsylvania law

vests legal and equitable ownership of property in one who purchases property and properly

records its deed. *See In re Brown*, 311 B.R. 721, 724 (Bankr. W.D. Pa. 2004)(citing

*Pennsylvania Company for Ins. on Lives v. Broad Street Hosp.,* 47 A.2d 281, 283 (Pa. 1946) for

the proposition that a sheriff sale is consummated the moment the hammer falls); *see also Butler*

*v. Lomas & Nettleton Co.,* 862 F.2d 1015, 1019 (3d Cir. 1988)(noting that the right to possession

of the property passes to a sheriff sale purchaser when the deed is executed and delivered). Here

JP Morgan accomplished both tasks several days in advance of the debtors' bankruptcy filing.

As a result, the bankruptcy court properly concluded that cause existed for relief from the stay

because JP Morgan, as owner of the residence, rightly requested possession of the residence. *See*

*In re Pulcini*, 261 B.R. 836, 842 (Bankr. W.D. Pa. 2001).

      The debtors' arguments to the contrary lack merit. JP Morgan's ownership interest in the

residence is unassailable as a matter of state law absent an appeal within the state court system.

Debtors suggest that JP Morgan's involvement in the alleged misconduct surrounding debtors'

refinancing of their home mortgage in August 2000 undermines its ownership interest and should

have been considered by the bankruptcy court. However, any allegations against JP Morgan

regarding conduct that occurred during the refinancing  should have been brought in the

foreclosure action. Indeed, debtors do not point to any irregularities in the sheriff sale procedures

such as gross inadequacy of price or fraud or misrepresentation in the sale process.[4]   Despite

---

[4]  As the Supreme Court explained in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), state law generally
requires the following procedural protections for a valid sheriff sale: " notice to the defaulting borrower, a substantial
lead time before the commencement of foreclosure proceedings, publication of a notice of sale, and strict adherence
to prescribed bidding rules and auction procedures. Many States require that the auction be conducted by a
government official, and some forbid the property to be sold for less than a specified fraction of a mandatory presale
fair-market-value appraisal." *Id.* at 542 (citing Zinman, Houle, & Weiss, Fraudulent Transfers According to Alden,
Gross and Borowitz: A Tale of Two Circuits, 39 Bus.Law. 977, 1004-1005 (1984) and  G. Osborne, G. Nelson, & D.
Whitman, Real Estate Finance Law 9, 446-447, 475-477 (1979)).

debtors' consistent urging to the contrary, this Court recognizes the efficacy of the state court foreclosure judgment and subsequent sale and recording of the deed; the Court is not at liberty to ignore those facts and their legal import under state law.

      2.    <u>Adequate Protection</u>

      In addition to the obvious cause for lifting the stay in light of JP Morgan's legal and equitable ownership interest in the residence, the debtors' claim that JP Morgan is adequately protected lacks merit.  A debtor bears the burden of establishing that a creditor has adequate protection.  *In re Olick*, 221 B.R. 146, 161 (Bankr. E.D. Pa. 1998).   The determination of adequate protection is within the bankruptcy court's discretion and it requires a "careful balancing" of the relevant factors, including the "value of the collateral, the likelihood it will depreciate over time, the debtor's prospects for a successful reorganization and the debtor's performance under the plan"; the inquiry also requires examination of "the balance of hardships between the parties and whether the creditor's property interest is being unduly jeopardized." *Id.*

      The only form of adequate protection offered by debtors was the pending adversary litigation. The bankruptcy court appropriately determined that the litigation cannot be adequate protection because it is, like all litigation, contingent, "speculative" and its end date is uncertain. *See In re Turner*, 326 B.R. 563, 577-78 (Bankr. W.D. Pa. 2005); *In re Ziegler,* 88 B.R. 67, 70 (Bankr. E.D. Pa. 1988).  As a result, the bankruptcy court did not abuse its discretion in denying that the related litigation provided adequate protection to JP Morgan.

      In their brief to this Court, debtors note that Judge Agresti had an "option" to order debtors to make a payment of a designated amount to JP Morgan as adequate protection.[5] Although debtors correctly note that cash payments are an often accepted form of adequate protection, they ignore the fact that they bore the burden of establishing adequate protection and their only offer of protection was in the form of the pending litigation against their creditors.  *See*

---

[5] 11 U.S.C. § 361 contains a list of three possible forms of adequate protection including cash payments, additional or replacement liens or "other relief."

Defendant's Answer, New Matter and Counterclaim at para. 7.   Consequently, relief on this

basis is foreclosed as well.

**B.     Section 547 Preferential Transfer**

Debtors also contend that the bankruptcy court's denial of their defense under Section

547 of the Bankruptcy Code was an error.   They argue that even if cause existed for lifting the

stay and JP Morgan lacked adequate protection, the Motion for Relief from the Stay should have

been denied because the pre-petition sale was an avoidable preference.  The Court disagrees.

Section 547 of the Bankruptcy Code permits the trustee to avoid transfers that were made:

> (1)     to or for the benefit of a creditor;
> (2)     for or on account of an antecedent debt owed by the debtor before such
>         transfer was made;
> (3)     made while the debtor was insolvent;
> (4)     made–
>         (A)     on or within 90 days before the date of the filing of the petition; or
>         (B)     between ninety days and one year before the date of the filing of
>                 the petition, if such creditor at the time of such transfer was an
>                 insider; and
> (5) that enables such creditor to receive more than such creditor would receive if--
>         (A)     the case were a case under chapter 7 of this title;
>         (B)     the transfer had not been made; and
>         (C)     such creditor received payment of such debt to the extent provided
>                 by provisions of  this title.

11 U.S.C.A. § 547(b).  Although the parties' briefs do not address all of the elements of section

547, after examination of the record and arguments advanced before this Court, it is clear that

only the fifth element is at issue.

The bankruptcy court relied on *In re Pulcini*, 261 B.R. 836 (Bankr. W.D. Pa. 2001) for

the proposition that:

> "A pre-petition transfer of a debtor's interest in real property to a lien creditor who
> purchases the property at a regularly-conducted, non-collusive sheriff's sale and who then
> sells the property to a third party for an amount greater than the amount of its lien is not
> avoidable in accordance with 547(b) as a preference.  In particular, the lien creditor does
> not 'receive more' for purposes of 547(b) than it would receive in a chapter 7
> liquidation."

Bankruptcy Court Order dated January 6, 2005 at 7 (quoting *Pulcini*, 261 B.R. at 844); *see also*

*Ehring v. W. Cmty Moneycenter,* 900 F.2d 184, 188-89 (9th Cir. 1990)("We conclude therefore

7

that a creditor who purchases at a regularly conducted foreclosure sale has not received more [for purposes of section 547(b)] than it would have under a Chapter 7 liquidation sale."); *In re Burke*, 10 B.R. 163 (Bankr. E.D. Pa. 1981)(holding that mortgagee who purchased residence at a prepetition sheriff sale had not engaged in a preferential transfer).

Based on *Pulcini* and related cases and the general principle that a non-collusive sheriff sale will not enable the purchasing lien creditor to receive more than the creditor would receive in a Chapter 7 bankruptcy, the bankruptcy court held that the non-collusive sheriff sale that occurred in this case could not be avoided under section 547.  It rejected the debtors' suggestion that the sheriff sale was collusive because of the alleged improprieties that occurred when they refinanced their home mortgage in August 2000 and held that the collusiveness of the sheriff sale should be measured by the events of the actual sale.[6]  Finally, the bankruptcy court rejected the debtors' reliance on *In re Andrews*, 262 B.R. 299 (Bankr. M.D. Pa. 2001), wherein the court avoided a sheriff sale transfer because it concluded that the sale was a preferential transfer.  The bankruptcy court noted that, although *Andrews* held that the sheriff sale could be a preferential transfer under section 547, the lien creditor's secured claim was "substantially less" than the fair market value of the property and, as a result, the lien creditor had received more than it would have under Chapter 7.  *Andrews*, 262 B.R. at 306.  The bankruptcy court  seemingly viewed *Andrews* as an exception to the otherwise governing principle that a non-collusive sheriff sale will not enable a creditor to receive more than it would have under Chapter 7.  The bankruptcy court concluded that  JP Morgan had not received "substantially" more than its secured interest in the property, as the lien holder had in *Andrews*, because the fair market value of the residence was nearly equivalent to the amount of debtors' foreclosed loan.

Neither the Third Circuit Court of Appeals nor the United States Supreme Court has spoken directly on the applicability of section 547 to pre-petition sheriff sales where a secured party purchases the property and records the deed prior to the bankruptcy filing.   The Court finds

---

[6]The bankruptcy court noted that debtors should have brought their allegations about any irregularities that occurred in August 2000 during the foreclosure proceeding in Westmoreland County court.

*In re Rambo*, 297 B.R. 418 (Bankr. E.D. Pa. 2003), more instructive than *Pulcini* and related cases because the approach adopted in *Rambo* emphasized the statutory requirements set forth in section 547 rather than the policy concerns discussed in *Pulcini* and the Supreme Court's decision in *BFP v. Resolution Trust Corporation,* 511 U.S. 531 (1994), where the Supreme Court concluded that  sheriff sales could not be attacked under section 548 of the Bankruptcy Code. Although the Court agrees with *Pulcini* that the states have an "important interest in enacting laws governing foreclosure of real property" and notes the import of *BFP* for its section 548 analyses and, by analogy, for section 547 cases, the Court bases its examination of the statutory requirements of Bankruptcy Code section 547 on the language of the Code.  Accordingly, unlike the approach adopted in *Pulcini*, the Court will analyze JP Morgan's purchase of the residence at the pre-petition sheriff sale under the specific requirements of section 547.

As was the case in *Rambo*, the first four elements of section 547 are satisfied here - the transfer in the sheriff sale was to a creditor, for or on account of an antecedent debt, made while debtors were insolvent and made within ninety days before the date of the filing of the petition. The fifth requirement of Section 547(b)(5) essentially

> "requires the bankruptcy court to 'undo' the transfers in question and then construct a hypothetical liquidation of the debtor as of the petition date to determine whether the defendant-creditor received more as a result of the transfers than it would have received in a Chapter 7 liquidation case. The plaintiff, to satisfy § 547(b)(5), must show that the creditor was preferred in some amount, and it cannot succeed if it is proven that (1) the creditor was fully secured; (2) the transfer was nothing more than a seizure of the secured creditor's collateral; or (3) the unsecured creditors would be paid in full in a Chapter 7 case."

*In re Union Meeting Partners*, 163 B.R. 229, 236-37 (Bankr. E.D. Pa. 1994)(quoting *In re Prescott,* 51 B.R. 751, 754 & n. 1 (Bankr. W.D. Wis.1985)).

It is relatively simple to determine what a secured creditor would have received under Chapter 7; to the extent the creditor was fully secured, it would receive a payment equal to the principal amount owed, interest, costs and the value of any liens assumed or paid.  *In re Cavalier Industries, Inc.*, 2002 WL 975868, *2 -3 (Bankr. E.D. Pa. 2002)(citing *In re Smith's Home Furnishings, Inc.,* 265 F.3d 959, 963 (9th Cir. 2001)); *Sloan v. Zions First National Bank (In re Castleton's Inc.),* 990 F.2d 551, 554 (10th Cir.1993); *A.I. Credit Corp. v. Drabkin,* 49 B.R. 605,

9

610 (D. D.C.1985).   To the extent the creditor is over secured, it would receive the same value as a fully secured creditor and any remaining balance from the value of the secured property would be passed along to the debtor's unsecured creditors.

The thornier issue, as the *Rambo* court highlighted,  is how to value the property that the creditor received in the transfer being challenged under section 547.   *Rambo*, 297 B.R. at  429. In *BFP* the Supreme Court determined that the relevant time inquiry for valuation of property received in a pre-petition transfer for purposes of section 548 was the time of the foreclosure sale.   *See BFP*, 511 U.S. at 538-39.   However, as the *Rambo* court noted, the inquiry into a violation of section 547 is different because "a court must construct a hypothetical Chapter 7 sale scenario" rather than determine whether the creditor had received "reasonably equivalent value." *Rambo*, 297 B.R. at 431.   According to *Rambo*, comparing the value of the property purchased pre-petition to the value a creditor would have received in a hypothetical Chapter 7 bankruptcy necessitates a determination of the value of the property as of the initiation of the bankruptcy case.   *Id.* at 431.

Determination of the value a Chapter 7 trustee could have secured for a particular piece of property as of the filing date is difficult as it is a very fact-specific inquiry and the fair market value of the property at the time of sale may not be a proxy for that value in all situations.   The instant case does not include evidence specifically establishing a value for the residence at the inception of the bankruptcy case; however, the facts suggest that a hypothetical Chapter 7 trustee would not choose to administer the asset.

Neither party disputes that JP Morgan is owed approximately $137,000.[7]   Although debtors do not provide any specific evidence, they suggested that the residence "is now worth more than $137,500;" however, they also state that they have no equity in the property. Paragraph 52 of the Adversary Complaint.   If the Court accepts the debtors' contention that the

---

[7]  JP Morgan claims that it is owed " $114,901.43 in principal, $17, 745.96 in interest from January 1, 2003 to September 9, 2004, $4,300.26 in escrow advances made to pay taxes and $544 in miscellaneous fees." Memorandum of Law in Support of Its Motion to Dismiss (pg. 5).  Debtors did not dispute this.

property had appreciated somewhat by the time they filed their bankruptcy case and their contention that they lack any equity in the property, a hypothetical Chapter 7 trustee would not administer and liquidate the property because it would not generate sufficient value for distribution to the unsecured creditors.

A Chapter 7 trustee administers the estate and more specifically liquidates property for the benefit of unsecured creditors. *See, Second National Bank of Nazareth v. Marcincin (In re Nadler),* 8 B.R. 330, 333 (Bankr. E.D. Pa. 1980).   The Chapter 7 trustee is specifically instructed by the United States Trustee to sell only those secured assets that will generate funds for the benefit of unsecured creditors. *Rambo,* 297 B.R. at 433 (citing U.S. Department of Justice Executive Office for United States Trustees, Handbook for Chapter 7 Trustees at 8-20 (2002)). Included in a hypothetical Chapter 7 Trustee's analysis of the asset's liquidation value would be the "trustee's commission and professional fees as well as the debtor's exemption." *Id.*

Given the near equivalence of the amount owed to JP Morgan and the approximate value of the residence coupled with the administrative costs associated with a property liquidation, it is unlikely that hypothetical Chapter 7 trustee would administer the asset.  Therefore, the sheriff sale did not enable JP Morgan to receive more than it would have under a Chapter 7 liquidation. As a result, the sheriff sale was not an avoidable preference under section 547 of the Bankruptcy Code.

### CONCLUSION

For the reasons set forth above, the Court concludes that it was within the bankruptcy court's discretion to grant JP Morgan relief from the automatic stay and the court did not abuse its discretion because there was adequate "cause" for that relief.   In addition, the Court concludes that the bankruptcy court did not err in denying appellants' claim that the sheriff sale was a section 547 preferential transfer.  Accordingly, the order entered by the bankruptcy court

on January  6, 2005 must be affirmed.  An appropriate order will follow.


Date: March 24, 2006


                                        s/ David Stewart Cercone
                                        David Stewart Cercone
                                        United States District Judge


cc:     Robert V. Barth, Jr., Clerk of Court
        United States District Court
        P. O. Box 1805
        Pittsburgh, PA 15230

        U.S. Bankruptcy Court
        Bankruptcy Clerk
        Suite 5414
        U.S. Steel Tower
        600 Grant Street
        Pittsburgh, PA 15219

        David A. Colecchia
        Law Care
        324 South Maple Avenue
        Greensburg, PA 15601

        Dorothy A. Davis
        Eckert Seamans Cherin & Mellott
        44th Floor U.S. Steel Tower
        600 Grant Street
        Pittsburgh, PA 15219

        Donna Donaher
        Tucker Arensberg, P.C.
        Suite 1500 One PPG Place
        Pittsburgh, PA 15222

        Office of the US Trustee
        1001 Liberty Avenue
        Liberty Center, Suite 970
        Pittsburgh, PA 15222

        Office of the Chapter 13 Trustee
        Ronda J. Winnecour
        3250 U.S. Steel Tower
        600 Grant Street
        Pittsburgh, PA 15219